Linda HOLLINS, Plaintiff–Appellant,

v.

Larry G. MASSANARI, Defendant–Appellee.

No. 01–3535.

United States Court of Appeals, Sixth Circuit.

Oct. 17, 2002.

**534**

Before KENNEDY and MOORE, Circuit Judges; and DOWD,* District Judge.

KENNEDY, Circuit Judge.

Plaintiff-appellant Linda Hollins seeks review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her widow's insurance benefits.

In the first administrative adjudication of this case, the administrative law judge determined that Hollins was not disabled, and had a residual functional capacity for only limited light work. Hollins appealed the finding of no disability, arguing that there was not substantial evidence to support the ALJ's decision. Specifically, she argued that the ALJ's determinations were wrong because: (1) her combined physical and mental impairments were equivalent to Listing 12.05C; (2) she is illiterate. The district court agreed that the ALJ had mishandled the equivalency issue, but was unwilling to rule that Hollins's impairments were in fact equivalent to Listing 12.05C. Instead, the court remanded the case to the ALJ for reconsideration of the equivalency issue. The district court also agreed that the ALJ had mishandled the question of Hollins's literacy, and remanded for consideration of that issue as well. *Hollins v. Apfel*, C–2–97–352 (S.D.Ohio 1997) (*Hollins I* ).

Upon remand, the ALJ did not merely reconsider the specific issues addressed by the district court's opinion. Instead, the ALJ conducted an entirely new hearing on the question of Hollins's disability. The ALJ determined that he had erred in his previous evaluation of Hollins's physical impairments, and conducted a new examination of the evidence on that issue. Based on this new inquiry, the ALJ concluded that Hollins did not have any severe physical impairments and therefore once again found no disability.

Hollins once again appealed to the district court on the grounds that the ALJ was bound by his earlier determination that Hollins did have severe physical impairments. The district court disagreed,

* Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

noting that under 20 C.F.R. § 404.955, the prior decision of the ALJ was no longer binding because Hollins had sought judicial review.[1] *Hollins v. Apfel,* 160 F.Supp.2d 834 (S.D.Ohio 2001) (*Hollins II* ). That issue has not been appealed.[2] Hollins also argued that the district court's initial decision in *Hollins I* established the law of the case as to the issue of her physical capacity, or, in the alternative, that *Hollins I* had claim preclusion and/or issue preclusion effect. Again, the district court disagreed, and it is on these grounds that Hollins appeals. *Id.* We affirm the district court's decision.

In order for Hollins to succeed under any legal theory, the district court must have issued a final decision on the merits regarding her physical impairments and residual functional capacity. *See Hammer v. Immigration and Naturalization Serv.,* 195 F.3d 836, 840 (6th Cir.1999) (noting that issue preclusion only applies if "the issue was actually litigated and decided in the prior action" and "resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation."), *cert. denied,* 528 U.S. 1191, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000); *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995) (noting that claim preclusion only applies if there has been "a final decision on the merits"), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996); *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (noting that "[t]he doctrine of law of the

case only comes into play with respect to issues previously determined.").

*Hollins I* did not constitute a decision on the merits regarding Hollins's residual functional capacity. The district court's opinion addressed only the two narrow errors committed by the ALJ in the initial hearing. The merit of the ALJ's determination regarding Hollins's physical capacity was assumed for the purposes of evaluating Hollins's claims regarding the ALJ's treatment of her combined mental and physical capacity. In other words, the district court held that *given* the ALJ's findings regarding physical capacity, the ALJ should have considered the combined effect of her mental and physical impairments and compared that full picture to Listing 12.05C. The fact that the ALJ made certain factual findings is essential to the district court's holding, but the truth of those findings is not.

Hollins also argues that the ALJ did not have the authority to exceed the scope of the remand order in *Hollins I* by opening an entirely new hearing. Under the "mandate rule," administrative agencies generally are obligated to follow the mandates set forth in a federal court decision. *Youghiogheny & Ohio Coal Co. v. Milliken,* 200 F.3d 942 (6th Cir.1999). Hollins does not dispute that the ALJ followed the district court's directive to reconsider Hollins's illiteracy and mental impairments. Rather, Hollins argues that the ALJ was limited to deciding only the specific issues

---

1. 20 C.F.R. § 404.955 provides in pertinent part: "The decision of the administrative law judge is binding on all parties to the hearing unless ... (b) you or another party requests a review of the decision by the Appeals Council within the stated time period, the Appeals Council denies your request for review, and you seek judicial review of your case by filing an action in Federal district court."

2. The dissent's argument that this is "the entire question on appeal" conflates the preclusive power of the ALJ's determination with the preclusive power of the district court's opinion in *Hollins I*. The former question, which Hollins does not raise before this court, is conclusively answered by 20 C.F.R. § 404.955, which clearly makes the ALJ's determination not final and therefore not binding under any of Hollins's legal theories. The latter question is the subject of this appeal.

indicated in the district court's remand order; namely, whether her mental impairments equal Listing 12.05C, and whether she was illiterate.

In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner,* 383 F.2d 748, 758 (6th Cir.1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion. Reconsideration of Hollins's physical impairments was not inconsistent with any express or implied order of the district court.

It is true that the district court's remand order in this case did not direct the ALJ to reconsider the evidence of Hollins's physical capacity. However, the ALJ did not need a mandate from a federal court to consider this issue. His power to do so derives from the legislative grant of authority contained in the Social Security Act. The Social Security Administration has promulgated regulations stating that, upon remand by a federal court, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case." 20 C.F.R. § 404.983. The ALJ therefore did not act outside his authority in ordering a de novo review of Hollins's physical capacity.[3]

For the forgoing reasons, we affirm the opinion of the district court.

DAVID D. DOWD, Jr., District Judge, dissenting.

DOWD, District Judge.

I respectfully dissent from the majority's opinion because, in my view, the issue of residual functional capacity ("RFC") was a *decided* issue which should not have been disturbed during the administrative proceedings following remand of *Hollins I.*[1] My reasoning follows.

The majority holds that it was not error for the ALJ to completely re-evaluate appellant's RFC on remand because *"Hollins I did not constitute a decision on the merits regarding Hollins's residual functional capacity."* Opinion, at 3. This conclusion, however, fails to recognize the *significance* of one of the "two narrow errors committed by the ALJ," *id.,* which triggered the remand, namely, the "mishandl[ing][of] the

---

3. Because the ALJ revisited his prior findings *sua sponte,* the issue before this Court is whether this ALJ possessed the authority to do so, and not whether the Commissioner waived his right to object or appeal the ALJ's original findings regarding Hollins's residual functional capacity.

1. I disagree with the majority's statement that the question of whether the ALJ was bound by his earlier determination "has not been appealed." Opinion, at 2. I believe that is the *entire* question on appeal. Law of the case, claim preclusion and issue preclusion are merely the legal theories advanced by the appellant to support her assertion that the ALJ *was* bound.

question of Hollins's literacy[.]" Opinion, at 2. As properly argued by appellant's counsel, literacy is only an issue if the RFC is for light work. Under the Vocational Rules (the "grids"), literacy comes into play in only two situations: (1) where an individual has an RFC for sedentary work and is a "younger individual;" or (2) where, as here, an individual has an RFC for light work and is "closely approaching advanced age."

The initial decision of the ALJ issued in May 1996 found that Hollins, at age 51, was "closely approaching advanced age," had only "limited" education and no past relevant work experience or transferable skills. The ALJ concluded that, if she were capable of performing the full range of light work (which he also concluded she was not), Hollins would be "not disabled" under Rule 202.10, Table No. 2, Appendix 1, Subpart P, Regulations No. 4. Admin. R. at 17, ¶¶ 8–12.[2] It was precisely at this point in the analysis where, in the *Hollins I* court's view, the ALJ made one of his "narrow errors" by completely failing to examine the question of literacy. Had he analyzed Hollins's literacy and determined that she was illiterate, he would have had to apply *not* Rule 202.10, but Rule 202.09 which, given her age and lack of relevant

work experience, would have directed a finding of "disabled."

The *Hollins I* court remanded, in part, so that the ALJ could make the literacy determination so critical to the selection of the appropriate vocational rule. Therefore, the remand *assumed* that the RFC for light work had been unchallenged. This, in fact, was a correct assumption. The Commissioner had not argued to the district court that the RFC finding of light work was incorrect. In addition, the Commissioner filed no objections to the magistrate judge's recommendation in Hollins I, a recommendation which was then adopted by the district court in its remand order. Nor did the Commissioner appeal to this Court the district court's final, appealable, sentence four remand order.[3] In short, the Commissioner did nothing to suggest that he disagreed with an RFC finding of light work. In fact, it was not the Commissioner who raised the issue even on remand. It was the ALJ who, *sua sponte,* decided to revisit his RFC determination. He declared that he was making a redetermination because he had made a mistake in his initial determination by applying principles that had *subsequently* been rejected by the Social Security Administration, as evidenced by new rulings.[4]

**2.** Considering that Hollins had only non-exertional limitations, the ALJ ultimately concluded, based on the testimony of a vocational expert, that there was a significant number of jobs in the national economy which she could perform. Admin. R. at 18, ¶ 13.

**3.** "The fourth and sixth sentences of 42 U.S.C. § 405(g) delineate the district court's authority to review a final decision of the [Commissioner].... Section 405(g), thus, plainly authorizes two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previ-

ously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Secretary of HHS,* 17 F.3d 171, 173–74 (6th Cir.1994). *See also, Melkonyan v. Sullivan,* 501 U.S. 89, 99–100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (there are only two possible kinds of remand under the statute). A sentence four remand order is immediately appealable to this Court. In the instant case, there was no appeal from the *Hollins I* ruling.

**4.** Although neither party has raised this issue, I believe it was error to give retroactive application of a new agency ruling, where that application renders incorrect an as-yet unchallenged finding that was correct under the rulings in effect at the time it was made.

In my view, the remand order of *Hollins I* rendered the unchallenged RFC determination final notwithstanding the fact that the order did not expressly verbalize that conclusion.[5] I would conclude that the ALJ exceeded the scope of the remand.[6] He should have left undisturbed the original RFC determination for "light work."[7]

Retroactivity is typically "looked upon with disfavor." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 224, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Two criteria must generally be satisfied in order to apply an administrative agency rule retroactively. First, the agency must express its clear intention that such rules be applied retroactively. *See id.* at 208, 109 S.Ct. 468. Second, Congress must have given the agency authority to promulgate retroactive rules. *See id.*

In November 1998, in re-evaluating appellant's functional restrictions, the ALJ pointed to SSR 96–7p and 96–8p, *see*, 61 Fed.Reg. 34474, 34483, which were promulgated on July 2, 1996, that is, *after* his original disability findings were made. SSR 96–7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," stated that it superseded SSR 95–5p, "Considering Allegations of Pain and Other Symptoms in Residual Functional Capacity and Individualized Functions Assessments and Explaining Conclusions Reached." SSR 95–5p had superseded SSR 88–13, "Evaluation of Pain and Other Symptoms." Because SSR 95–5p declared its purpose to be the restatement and clarification of "longstanding policies of the Social Security Administration," at least one court has applied SSR 95–5p retroactively when it reviewed an ALJ determination that was made *before* the ruling was promulgated. SSR 96–7p, which now supersedes 95–5p, makes no similar mention of "longstanding policy" or retroactivity. *Compare*, SSR 00–3p (May 15, 2000) which specifically discusses how to handle already-allowed and pending claims in light of its deletion of a listing relating to obesity. SSR 96–7p does state that its purpose is to clarify, but that clarification relates to the need for credibility assessments when considering statements about pain and other symptoms. SSR 96–8p, "Assessing Residual Functional Capacity in Initial Claims," similarly makes no mention of longstanding policy or retroactivity.

Since no party raised this issue, I will not address it further. However, it seems likely that, in view of the fact that the Appeals Council refused review of the original determination on March 12, 1997, nine months *after* the promulgation of the new rulings, it did not believe the rulings needed to be retroactively applied to correct any error of the ALJ. Therefore, it seems unfair to allow the ALJ to suddenly decide to upset a settled RFC determination by applying the new rulings which even the Appeals Council had never applied.

5. Certainly the district court was free to assume that the agency which deals with these matters on a daily basis would, even without a direct reference, identify the nuance and understand the significance of a remand order directing that a determination be made as to Hollins's literacy *so that a proper determination could be made with respect to which of the vocational rules to apply.*

6. Not only did he exceed the scope of the remand, he did so with an absurd result. The ALJ ordered Hollins to undergo a new medical examination, which he was free to do in order to ascertain any *prospective* changes in her condition since he had last ruled. On the advice of counsel who believed the ALJ was acting beyond the scope of the remand order, Hollins did not appear for the examination. (I note that there is nothing in the administrative record which would suggest that counsel could have guessed that the ALJ asked for a new medical consultation because he was contemplating application of *new* agency rulings which would change the RFC determination.) The ALJ then exercised his discretion under 20 C.F.R. § 404.1518 to apply a presumption that Hollins was not disabled which, when coupled with his application of completely new standards set forth in the new rulings, resulted in the ludicrous conclusion that Hollins was capable of *all* exertional levels of work, including *heavy* work. In my view, the ALJ abused his discretion by applying this harsh presumption under circumstances where, as here, Hollins did not appear on the advice of counsel. Clearly, she should not be punished for taking her counsel's advice, misguided as it may, arguably, have been.

7. I have no quarrel with the majority's statement that an ALJ is not precluded "from

In addition, although appellant has not raised this issue, I note that the ALJ's second determination, made in November 1999, incorrectly found that Hollins was *still* only "closely approaching advanced age," Admin. R. at 183, ¶ 11, when, in fact, she was already 55 years old, an age categorized for disability purposes as "advanced age." [8] Had the ALJ properly left in place his first RFC determination, as of November 1999, Hollins's situation would have been governed by Rule 202.01 and a finding of "disabled" would have been directed whether or not she was found to be illiterate.

That having been said, a finding of illiteracy, even coupled with an incorrect age of 54, would have entitled Hollins to a determination of "disabled" *provided* the RFC was for light work. Thus, it was very significant that the ALJ *sua sponte* decided to throw out the earlier RFC determination and then, harshly, exercised his discretion to apply a negative presumption to defeat a finding of disability.

I respectfully dissent.

acting in ways that go beyond, but are not inconsistent with, the district court's opinion." Opinion, at 4–5. However, I believe the ALJ *did* act in a way that was inconsistent with the district court's opinion, given the significance of the remand order which specifically required an examination of Hollins's literacy, an issue which had great significant (for "grid" purposes) given her age and the RFC for light work.

8. Hollins was only 54 years old in July 1999 when the ALJ conducted his hearing following the remand. However, her birthday was on August 28, 1999. Therefore, she was 55 years old as of the end of her prescribed period, i.e., August 31, 1999, and by the time the ALJ rendered his second determination in November 1999.